Filed 5/8/13  P. v. Ibarra CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054766 |
| v. | (Super.Ct.No. FSB902536) |
| ERIK IBARRA et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed with directions.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant Erik Ibarra.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant Gabriel Adam Sanchez.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Lilia E. Garcia and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a jury trial, defendants and appellants Erik Ibarra (Defendant Ibarra) and Gabriel Adam Sanchez (Defendant Sanchez) were convicted of first degree murder (Pen. Code,[1] § 187, subd. (a)) of Michael Edayan (the Victim); robbery (§ 211) of the Victim and four others; and attempted premeditated murder (§§ 187, subd. (a), 664) of the four others. The jury also found that with respect to the murder and robbery of the Victim, Defendant Ibarra personally and intentionally discharged a firearm that killed him (§ 12022.53, subd. (d)), and that Defendant Ibarra personally used, and personally and intentionally discharged, a firearm in the commission of all the crimes. (§ 12022.53, subds. (b), (c).) Finally, the jury found that Defendant Sanchez knew his codefendant was armed during the commission of all of the charged crimes. (Former § 12022, subd. (a)(1).)

On October 7, 2011, Defendant Ibarra was sentenced to state prison for an indeterminate term of 75 years to life, plus a consecutive term of 106 years 8 months. Defendant Sanchez was sentenced to state prison for an indeterminate term of 50 years to life plus an additional consecutive term of one year. Both appeal. Defendant Ibarra contends the trial court committed reversible error by allowing an expert to testify about his purported gang motive or gang intent, and the abstract of judgment incorrectly describes one sentence enhancement. Defendant Sanchez contends he received ineffective assistance of counsel when his attorney failed to ask the trial court to dismiss his prior conviction alleged under the "Three Strikes" law, and section 654 precludes

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

imposition of concurrent terms on the five robbery convictions.  Defendant Sanchez further joins in any argument made by Defendant Ibarra.

## I.  STATEMENT OF FACTS

Given Defendants' issues on appeal, a shortened version of the facts will suffice; however, further facts will be provided throughout the opinion as needed.

On the late evening of June 14, 2009, the Victim and Bryan Juarez, Michael Hilliard, Juan Monge, and Juan Nieto went to Blair Park in San Bernardino to do some target practicing with their airsoft[2] guns.  While at the park, Defendants approached them.  Defendant Ibarra had a black semiautomatic firearm pointed at them as Defendant Sanchez went through everyone's pockets.  As Defendants began to walk away, the Victim called out something to the effect of, "hey, if you put the gun down, we can fight."  Defendant Ibarra, followed by Defendant Sanchez, immediately "[t]urned around and took a few steps closer [to the Victim] and fired" into his face.  Defendant Ibarra then opened fire on the others.  The Victim died.

## II.  GANG EXPERT TESTIMONY

Defendants contend the trial court erred in admitting testimony they were affiliated with a gang.  They argue the evidence was irrelevant and unduly prejudicial, and that its admission violated their constitutional rights to due process and a fair trial.

---

[2] Airsoft guns fire only small plastic pellets with a force inadequate to break skin. They are toy "replicas" of guns that bear a distinct bright-orange plastic piece at the end of the barrel.

3

## A. Further Background Information.

Prior to trial on July 19, 2011, the People moved to admit gang evidence to show that Defendants were "both gang members from the same gang out of Monrovia," and they had been convicted of a gang-related battery which they committed in concert. The prosecutor argued the evidence was relevant to show (1) Defendant Sanchez's knowledge that (a) violence was the "natural and probable consequence" of committing a crime with Defendant Ibarra and (b) Defendant Ibarra was armed on the night in question; and (2) Defendant Sanchez's "intent" and "plan" in committing the charged crimes with his fellow gang member. She also argued the evidence was relevant to the underlying reason, or motive, for the fatal shooting, namely, that as a gang member accompanied by another gang member, Defendant Ibarra was bound by code and a desire for personal glory to react to the Victim's challenging comment with deadly force.

The court remarked that Defendant Ibarra's gang membership did not "necessarily go to premeditation" but agreed that it was relevant to motive. The prosecutor continued that the gang-related motive was not limited only to elevating the gang's and Defendant Ibarra's own status, but included instilling fear in the community and discouraging witnesses from cooperating with the police.

The court clarified: "So with respect to [Defendant] Ibarra, there's motive, increased status in the gang . . . [and] witness fear and intimidation? [¶] . . . [¶] . . . [And w]ith respect to [Defendant] Sanchez, it's— [¶] . . . [¶] . . . natural and probable cause—foreseeability that he has a gun, that he might use the gun, and the fact that they

4

have previously committed a crime together, which shows or can show that they planned this robbery together?" The prosecutor responded affirmatively.

Defendant Ibarra's counsel objected that the evidence was irrelevant. He argued that the evidence would only have been relevant had there been a gang charge or allegation. He denied that the evidence tended to establish motive and characterized the prosecution's argument as an illogical leap that a gangster would have a special reason for pulling the trigger. The court clarified that the expert would simply testify to "how important not being . . . disrespected is to a gang member and that that sort of disrespect will be met with violence, especially when it's committed in front of another gang member." The court again remarked that it did not "buy the premeditation argument," but stated that the evidence was relevant to Defendant Ibarra's motive for shooting.

Defendant Ibarra's counsel countered that the evidence was "extremely prejudicial" and that it would permit the prosecutor to "present a picture to the jury of a violent gang member . . . ." He again asserted that the evidence would only have been admissible had Defendants been charged with a gang crime. The court stated: "It also becomes relevant . . . if some of th[e] witnesses are fearful about testifying because they suspect these people are gang members . . . so I think it's relevant for motive and witness reactions and fear." The prosecutor noted that "[w]ith respect to prejudice," the charged crimes, namely, that "[Defendant] Ibarra shot some kid point-blank in the face during a robbery," were far more egregious than the anticipated gang evidence, so the latter evidence was unlikely to emotionally sway jurors.

5

Defendant Sanchez's counsel argued that the evidence was inadmissible "character evidence" proscribed by Evidence Code section 1101, subdivision (a). He acknowledged the exceptions for "knowledge, intent, motive, plan, or scheme," but contended there was "no question about the motive for the robbery," or the "intent of the shooter." According to his interpretation of the case, the motive was obvious from the fact that "the victim made a statement, and that [Defendant] Ibarra responded to that statement." He also complained that the People were not required to prove motive, and they had "plenty of evidence as to the issues that they have to prove." Finally, he repeated the argument of Defendant Ibarra's counsel that only a gang crime charge or gang allegation would have made gang evidence relevant.

The court found it significant that Defendants had committed prior crimes together and pointed out that the People sought to introduce the gang evidence to show the motive not for the robbery but for the shooting. The court then took the matter under submission.

A few days later, on July 20, 2011, prior to the start of trial, the court ruled the gang evidence was "admissible as to [Defendant] Ibarra regarding motive with respect to the murder charge. [¶] It's significant that one of those gang priors that the defendants committed together and, therefore, the identity of each of them in this crime, it goes to whether they had a plan or scheme to commit the robbery ahead of time. [¶] It goes to [Defendant] Sanchez regarding knowing whether the codefendant was armed, if, in fact, he was, and it goes to whether he would have known that the commission of murder was a natural and probable consequence of an armed robbery. . . ." The court also expressly

6

found that "the probative value was not substantially outweighed by the danger of undue prejudice . . . ."

During trial, Officer Yolanda Gutierrez testified as a gang expert. She testified that victims of and witnesses to crimes committed by gang members tend not to cooperate with the investigation because they "fear . . . what might happen to them or their family." "Monrovia Nuevo Varrio" (MNV) is a Hispanic criminal street gang based in Monrovia. Members, including Defendants, display "MNV," "MNVR" (Monrovia Nuevo Varrio Rifa), and "X" with a number three tattoos. Defendant Ibarra is known as "Stomps" or "Stomper," and Defendant Sanchez is known as "Lucky" and "Lil' Vago."

Defendant Sanchez was convicted in 2004 of robbery and assault, and both crimes were found to have been committed for the benefit of a criminal street gang. He also was convicted of being a felon in possession of a firearm, and that crime, too, was found to have been committed in association with a criminal street gang. Defendants together committed a battery, which was found to have been committed for the gang, and Defendant Ibarra was convicted of intimidating a witness, which crime also was found to have been committed for the gang.

Based on Defendants' conduct and tattoos, as well as information provided by other officers who encountered Defendants on the street, Officer Gutierrez opined they were MNV gang members. She explained that when a gang member is challenged by someone, he must respond. A response to perceived disrespect would be even more important if another gang member were present to witness the confrontation. Gang members back one another up in the commission of crimes. They "communicate with

7

one another. If one has a gun, the other is going to know." Officer Gutierrez opined that Defendant Sanchez knew that Defendant Ibarra had a gun. In response to the hypothetical of two men from Monrovia committing crimes in San Bernardino, the officer said that such conduct would inure to the benefit of MNV by raising its profile in the surrounding communities and increasing the gang's stature. She testified that the commission of the robbery at Blair Park enhanced Defendant Ibarra's reputation in the gang. Regarding the Victim's statement about putting down the gun, Officer Gutierrez stated that Defendant Ibarra was "being called out," and that had he failed to respond to the challenge, the gang would have found out. The prosecutor then asked, "What would be the motive [of] . . . shooting at . . . the other young men?" Officer Gutierrez replied, "To eliminate any possible witnesses." Similarly, when Defendant Sanchez was in the getaway car, he told Defendant Ibarra's then girlfriend and another girl they had "better not say anything about what happened to anybody and that whatever happened stays with the people . . . in the car." Officer Gutierrez opined it was reasonable for the girls to take Defendant Sanchez's statement as a threat.

On cross-examination, Officer Gutierrez acknowledged that Blair Park is not in the territory claimed by MNV, and that the commission of a crime outside the gang territory could be either good or bad for the member depending on the gang's policy about off-territory crimes. She reiterated that gang members work to "instill fear" in the community.

The jury was instructed that it was not required to accept Officer Gutierrez's opinions as true or correct. The jurors were further instructed that gang evidence could

8

only be considered for the limited purposes of (1) deciding Defendants' identity or motive; or whether Defendant Sanchez had plan or scheme to commit robbery, knew that Defendant Ibarra was armed, or knew that murder or attempted murder was a natural and probable consequence of robbery committed in concert with Defendant Ibarra; and (2) evaluating witness credibility. The jury was admonished not to consider the evidence for any other purpose or conclude that Defendants were of bad character or disposed to commit crime.

## B. Applicable Law

"California courts have long recognized the potentially prejudicial effect of gang membership. As one California Court of Appeal observed: '[I]t is fair to say that when the word "gang" is used in Los Angeles County, one does not have visions of the characters from the "Our Little Gang" series. The word gang . . . connotes opprobrious implications. . . . [T]he word "gang" takes on a sinister meaning when it is associated with activities.' [Citation.] Given its highly inflammatory impact, the California Supreme Court has condemned the introduction of such evidence if it is only *tangentially* relevant to the charged offenses. [Citation.] In fact, in cases not involving gang enhancements, the Supreme Court has held evidence of gang membership should not be admitted if its probative value is minimal. [Citation.] 'Gang evidence should not be admitted at trial where its sole relevance is to show a defendant's criminal disposition or bad character as a means of creating an inference the defendant committed the charged offense.' [Citation.]

9

"Thus, as general rule, evidence of gang membership and activity is admissible if it is logically relevant to some material issue in the case, other than character evidence, is not more prejudicial than probative and is not cumulative. [Citation.] Consequently, gang evidence may be relevant to establish the defendant's motive, intent or some fact concerning the charged offenses other than criminal propensity as long as the probative value of the evidence outweighs its prejudicial effect. [Citations.] 'Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.]' [Citation.] Nonetheless, even if the evidence is found to be relevant, the trial court must carefully scrutinize gang-related evidence before admitting it because of its potentially inflammatory impact on the jury. [Citations.]

"[T]he decision on whether evidence, including gang evidence, is relevant, not unduly prejudicial and thus admissible, rests within the discretion of the trial court. [Citation.] 'Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" [Citation.]' [Citations.] It is appellant's burden on appeal to establish an abuse of discretion and prejudice. [Citation.]" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223-225.)

10

### C.  Analysis

Defendants contend the gang evidence was "wholly lacking in foundation, speculative, and irrelevant."  (Underlining in original.)  They argue that "gang motive or gang intent was irrelevant to the charged counts and enhancements" because there were no gang allegations in the information.  (Underlining in original.)  As such, gang motive was not needed, nor did any intent to kill "hinge on the presence or absence of a gang motive . . . ."  Moreover, Defendants assert "there was a logical non-gang motive for the shooting based on a challenge issued by one testosterone-driven young male (already well aware of the presence of a firearm from the robbery) to another one."  (Underlining in original.)  Viewing the situation as merely a challenge from one caveman to another, Defendants argue that expert testimony regarding gangs and gang motives was unnecessary.

In response, the People argue that motive and intent are relevant to explain why Defendant Ibarra would "walk[] up to an unarmed man and [shoot] him in the face point-blank for nothing more than his having suggested that [Defendant] Ibarra would not have been so brazen without his gun."  We agree.  Defendants, two armed men, had successfully robbed five young unarmed men.  While one of the five made a verbal challenge to fight without a gun, why did Defendant Ibarra have to respond so violently?  As the People aptly point out, "[t]he gang expert's testimony put this otherwise inexplicably violent response in context."  Namely, Officer Gutierrez explained that when gang members perceive they have been disrespected, they respond with violence.  The Victim's verbal challenge was disrespectful to Defendant Ibarra in the presence of

11

another gang member, Defendant Sanchez. Thus, Defendant Ibarra had to defend his reputation along with that of the gang. The probative value of the gang evidence as to motive was more than substantial.

Notwithstanding the above, Defendants claim there was no evidence the robbery or murder was motivated by a desire or intent to benefit the gang. They argue that (1) there was no evidence the Victim or his friends were from a rival gang, (2) there was no evidence that gang territory was an issue, and (3) there was no evidence that Defendants made known their gang affiliation. This argument might have merit if the only crime charged was robbery. However, the senseless murder of an unarmed young man, together with the attempted murders of four other young men, under the circumstances before this court, warrant the introduction of gang evidence.

Regarding Defendants' gang affiliation, they fault the trial court for allowing evidence of their prior criminal acts that were gang related, arguing, "these priors [were] not probative of, or relevant to, [Defendant] Sanchez's purported 'knowledge' about how [Defendant Ibarra] would act in the park, but [were] inadmissible . . . prior bad acts . . . [under] subdivisions (a) and (b) of Evidence Code section 1101 . . . ." Again, we disagree. As the People point out, the prior gang-related crimes show Defendant Ibarra's intent to shoot the Victim and the four others, as well as Defendant Sanchez's knowledge that Defendant Ibarra was armed, along with Defendant Sanchez's willingness to commit violent crimes with his partner.

Finally, Defendants argue that Officer Gutierrez's opinions that Defendant Ibarra carried a firearm and shot the Victim with a gang motive or intent violate the rule

12

announced in *People v. Killebrew* (2002) 103 Cal.App.4th 644, 658, disapproved on another point in *People v. Vang* (2011) 52 Cal.4th 1038, 1047, fn 3.  However, "[t]estimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.)  Rather, the admissibility of expert opinion testimony that embraces the ultimate issue """"depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . ."""" (*Killebrew*, *supra*, at p. 652.)  It is well settled that in cases where gang offenses and enhancements are alleged, expert testimony regarding the culture, habits, and psychology of gangs is generally permissible because these subjects are """"sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.  [Citations.]" [Citation.]' [Citation.]" (*Id*. at p. 656; see also *People v. Gardeley* (1996) 14 Cal.4th 605, 617.)  For example, an expert may properly testify concerning "the size, composition or existence of a gang [citations], gang turf or territory [citations], an individual defendant's membership in, or association with, a gang [citations], the primary activities of a specific gang [citations], motivation for a particular crime, generally retaliation or intimidation [citations], whether and how a crime was committed to benefit or promote a gang [citations], rivalries between gangs [citation], gang-related tattoos, gang graffiti and hand signs [citations], and gang colors or attire [citations]." (*Killebrew*, *supra*, at p. 657, fns. omitted.)  "A trial court's determination as to whether an expert should be allowed to opine about a particular subject is reviewed on appeal for abuse of discretion.  [Citations.]" (*People v. Sandoval* (2008) 164 Cal.App.4th 994, 1001.)

13

Here, Officer Gutierrez's testimony not only helped to explain Defendant Ibarra's violent response to the Victim's verbal challenge, it also helped the jury evaluate witness credibility. Several witnesses provided conflicting and incomplete accounts of what had happened when interviewed by the police. Their testimonies at trial were not consistent with their statements. Absent the gang evidence, the jury could have concluded that the witnesses were lying. In fact, defense counsel encouraged the jurors to do just that. The officer's testimony provided an explanation for the conflicting witness testimonies. She explained that victims and witnesses to gang crimes normally fail to cooperate with law enforcement because they fear the gang member or gang will retaliate against them and/or their families. In fact, gang members go to great lengths to instill this fear in the community. Here, witnesses testified to their fear.

Regarding Evidence Code section 352, although gang evidence may be prejudicial, here the probative value far outweighed any prejudicial effect. "'"Unless the dangers of undue prejudice, confusion, or time consumption "'substantially outweigh'" the probative value of relevant evidence, a[n Evidence Code] section 352 objection should fail. [Citation.] "'The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.'"' [Citation.]' [Citation.] [¶] The prejudice that [Evidence Code] section 352 "'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.] "Rather, the statute uses the word in its

14

etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." [Citation.]' [Citation.]" (*People v. Scott* (2011) 52 Cal.4th 452, 491.)

Given the facts in this case, the gang evidence was mild compared to the actual crimes. While Defendants describe Defendant Ibarra as acting "rashly, impulsively, or without careful consideration and thus without deliberation or premeditation," the record does not support such description. (Underlining in original.) According to the record, Defendant Ibarra turned, walked up to the Victim (who had done nothing more than issue a verbal challenge) and fired right in his face. He then opened fire on the four others who had not said one word. There was nothing rash or impulsive about Defendant Ibarra's actions. The trial court carefully scrutinized the proffered evidence and correctly found its prejudicial effect did not outweigh its probative value in establishing motive, intent, plan, and knowledge. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 [evidence of gang membership is admissible to prove specific intent, means of applying force, or other issues pertinent to guilt of the charged crime].)

15

III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Sanchez argues that he received ineffective assistance of counsel (IAC) when his trial counsel failed to file a motion to strike his prior strike convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

In order to establish a claim of IAC, defendant must demonstrate "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result.  [Citations.]  A 'reasonable probability' is one that is enough to undermine confidence in the outcome."  (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541, citing, among other cases, *Strickland v. Washington* (1984) 466 U.S. 668, 694.)  Hence, an IAC claim has two components: deficient performance and prejudice.  (*Strickland v. Washington*, *supra*, at pp. 687-688, 693-694; *People v. Williams* (1997) 16 Cal.4th 153, 214-215.)  If the defendant fails to establish either component, his claim fails.

When a claim of IAC is made on direct appeal and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation.  (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

According to Defendant Sanchez, a *Romero* motion was warranted because (1) both his prior convictions of possessing a firearm and misdemeanor battery were

16

serious only because they were committed for the benefit of a street gang; (2) he had not killed anyone, he had not possessed a firearm, and he was convicted of felony murder only because of the robbery conviction; and (3) he told Defendant Ibarra to calm down multiple times. Defendant Sanchez contends there was no detriment to filing such motion, and because the trial court indicated that he "should be given some leniency because he was not the shooter . . . there is a reasonable probability that had a *Romero* motion been made, the trial court would have dismissed the prior conviction alleged under the three strikes law so that it could impose a more just sentence."

The trial court's discretion to strike a prior conviction pursuant to section 1385 is limited. (*Romero*, *supra*, 13 Cal.4th at p. 528.) The trial court's discretion to strike a qualifying strike is guided by "established stringent standards" designed to preserve the legislative intent behind the Three Strikes law. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "[T]he court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

To begin with, the People point out that the trial court, on its own, could have chosen to strike Defendant Sanchez's prior conviction. The People argue that by claiming IAC, Defendant Sanchez "presumes this Court will infer that the lower court was unaware of its discretion to strike his prior strike." We do not. The "trial court is

17

presumed to have been aware of and followed the applicable law" when exercising its discretion. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) Thus, as the People aptly argue, because the trial court did not dismiss Defendant Sanchez's prior on its own motion, "it did not find [Defendant Sanchez] or his circumstances to be so extraordinary as to take him outside the purview of the Three Strikes Law."

Notwithstanding the above, we will assume that counsel's performance was deficient in not filing a *Romero* motion. Thus, we consider whether Defendant Sanchez was prejudiced by the deficient representation, i.e., was there a reasonable probability that, but for counsel's failings, defendant would have obtained a more favorable result? We conclude that there was not. Defendant Sanchez was an active gang member who had been convicted of possession of a firearm for the benefit of his gang, who had committed a prior offense with Defendant Ibarra, again for the benefit of their gang, who willing assisted Defendant Ibarra in the armed robbery of five young unarmed men, late at night, in a deserted park, who followed Defendant Ibarra when he turned around and shot the Victim, and who then warned witnesses not to tell anyone what had happened. Defendant Sanchez does not fit the description of a defendant who should be treated as being outside the purview of the Three Strikes law. While Defendant Sanchez claims that "the trial court indicated at the sentencing hearing that [he] should be given some leniency because he was not the shooter," we find that the only leniency contemplated by the trial court was to run the sentences concurrently. As the People point out, the trial court chose to sentence Defendant Sanchez to the upper term on all of the robbery and

18

attempted murder convictions, notwithstanding the fact that any term imposed would be doubled by the strike.

Given the above, Defendant Sanchez's IAC claim fails.

## IV.  CORRECTING THE ABSTRACT OF JUDGMENT

Defendant Ibarra contends, the People concede, and this court agrees that the abstract of judgment incorrectly lists count 2's section 12022.53, subdivision (b) enhancement as "10-LIFE" rather than as "S" for stayed.  In fact, the trial court imposed, as to count 2, a 10-year enhancement, as one of two "lesser gun allegations," and then stayed it pursuant to section 12022.53, subdivision (f).  The sentencing minute order accurately reflects this.  Thus, we direct the trial court to correct the abstract of judgment to reflect the stayed term and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  This court has the authority to order the abstract of judgment corrected to conform to the trial court's oral pronouncement of judgment.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385-386.)

## V.  SECTION 654

Defendant Sanchez was sentenced to 10 years (the upper term of 5 doubled to 10 for the strike prior) for each of the five robbery convictions and 18 years (9 doubled) for each of the four attempted murders, all of which to run concurrent to a term of 50 years to life (25 doubled) for the murder of the Victim, and a consecutive one-year term for the firearm allegation.  He contends, the People concede, and we agree that the trial court should have stayed the terms on the robberies.

19

When a court imposes a term for felony murder, it cannot impose a term for the underlying felony offense. (§ 654; *People v. Sanchez* (2009) 179 Cal.App.4th 1297, 1315 [Fourth Dist., Div. Two], overruled on other grounds as stated in *People v. Rodriquez* (2012) 55 Cal.4th 1125, 1137, fn. 8.) This is because the underlying felony is a statutorily defined element of the crime of felony murder, and is thus the same act which makes the killing first degree murder. (*People v. Sanchez, supra*, at p. 1315.) Furthermore, section 654 bars punishment for both a greater offense that is found by the jury to be a natural and probable consequence of an underlying felony, and that underlying felony itself. (*People v. Bradley* (2003) 111 Cal.App.4th 765, 769-772.) Here, because Defendant Sanchez was found guilty of felony murder committed during the robbery of the Victim, and the attempted murders of the four others as a natural and probable consequence of the robbery of each one, the trial court could impose only one term for each victim, i.e., the one corresponding to the crime that carried the greater punishment. Thus, the trial court should have stayed the terms on the robbery convictions.

## VI. DISPOSITION

The superior court is directed to issue an amended abstract of judgment for Defendant Ibarra to reflect that as to count 2, the 10-year enhancement under section 12022.53, subdivision (b), is stayed pursuant to section 12022.53, subdivision (f). The superior court is also directed to modify the judgment as to Defendant Sanchez to stay the terms on his robbery convictions pursuant to section 654 and to amend the abstract of judgment accordingly. The court is further instructed to forward certified copies of each

20

defendant's amended abstract of judgment to the Department of Corrections and

Rehabilitation.  In all other respects, each defendant's judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST
J.

We concur:


RAMIREZ
P.J.

RICHLI
J.

21